## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **KENNETH GAY**, on behalf of himself and all others similarly situated, | ) ) ) Civil No. ) |
| Plaintiff, | ) ) |
| | ) **CLASS ACTION COMPLAINT** |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| **GENERAL MOTORS COMPANY**, | ) ) |

Defendant.

## CLASS ACTION COMPLAINT

Plaintiff Kenneth Gay ("Plaintiff"), on behalf of himself and all others similarly situated, by counsel, brings this Class Action Complaint against Defendant General Motors Company ("GM" or "Defendant"), and alleges as follows:

## INTRODUCTION

1.    Plaintiff Kenneth Gay brings this action for himself and on behalf of all persons who purchased or leased in Arizona certain vehicles equipped with uniform and uniformly defective air conditioning Systems designed, manufactured, distributed, and sold/leased by GM and/or its related subsidiaries or affiliates, as further described below ("Class Members").

1

2.     The vehicles at issue in this action include the 2015-2017 Cadillac Escalade, 2014-2016 Chevrolet Silverado 1500, 2015-2017 Chevrolet Suburban, 2015-2017 Chevrolet Tahoe, 2014-2016 GMC Sierra 1500, and 2015-2017 GMC Yukon (the "Class Vehicles").

3.     These Class Vehicles' air conditioning systems ("AC Systems") have a serious defect that causes the AC Systems to (a) crack and leak refrigerant; (b) lose pressure within the AC System; and (c) fail to properly function to provide cooled air into the Vehicle's passenger cabin (the "AC System Defect").

4.     On information and belief, the AC System is substantially the same, from a mechanical engineering standpoint, in all Class Vehicles, in that the AC Systems in all Class Vehicles are made up of substantially the same components and all employ the same general mechanism to deliver cooled air to the passenger cabin.

5.     The AC System in the Class Vehicles is defective because it is insufficiently strong and durable to perform its intended function – providing cooled air into the passenger cabin of the Vehicle – and to withstand the internal pressures and external forces that the System encounters during normal and expected use and conditions.

6.     The AC System failure can first occur at low mileages, within the 36,000 mile New Vehicle Express Warranty period.

7.    Because of the high number of failures, AC System replacement parts are on national backorder and the wait for replacement parts is long – often many months – during which time Plaintiff and Class Members must suffer without a functioning AC System in their Vehicles.

8.    Moreover, GM's replacement of faulty AC System components with equally defective replacement parts leaves the AC System susceptible to repeated failure and thus does not permanently remedy the AC System Defect.

9.    When the AC System fails outside of the warranty period, consumers are forced to pay between $150 and $2000 out of pocket to repair their AC Systems with the same defective parts, and still are subjected to the same long wait times for backordered parts. The long wait times for backordered GM parts meant many consumers were forced to buy aftermarket replacement parts because there was no timeline for when GM parts would be available.

10.   The AC System Defect inhibits Plaintiff's and Class Members' expected, comfortable, and safe use of their Vehicles, and requires Class Members to go months without functioning AC Systems while waiting for replacement parts, and to pay for equally defective replacement parts that are susceptible to failure.

11.   The AC System Defect creates a safety risk for Plaintiff and Class Members because AC System failure subjects the occupants of the Vehicles to unsafely high temperatures  and can lead to decreased visibility due to fogging of the windows and an inability to use the AC System to de-fog the windows.

12.   On information and belief, prior to sale or lease of the Vehicles at issue, GM  knew of the AC System Defect through sources such as pre-release evaluation and testing; repair  data; replacement part sales data; early consumer complaints made directly to GM, collected by  the National Highway Transportation Safety Administration's Office of Defect Investigation  ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from GM dealers; and other internal sources. Yet despite this  knowledge, GM failed to disclose and actively concealed the AC System Defect from Class Members and the public, and continued to market and advertise the Class Vehicles as "reliable," "durable," with "functional," "customer-focused" interior AC Systems, which they are not.

13.   GM has failed to provide a permanent in-warranty fix for the Defect within a  reasonable time, forced Class Members to wait unreasonable lengths of time for repairs, and/or  pay out-of-pocket to

replace broken AC System components with equally defective replacement parts or aftermarket parts.

14.   As a result of GM's alleged misconduct, Plaintiff and Class Members were harmed and suffered actual damages, including that the Class Vehicles contain defective AC Systems, have manifested, and continue to manifest, the AC System Defect, and that GM has not provided a permanent, no-cost remedy for this Defect within a reasonable amount of time.  Furthermore, Plaintiff and Class Members have incurred, and will continue to incur, out-of- pocket unreimbursed costs and expenses relating to the AC System Defect.

## JURISDICTION & VENUE

15.   This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action involving more than 100 class members in which matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and in which at least one member of the class of plaintiffs is a citizen of a state different from a defendant.

16.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because GM transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. There are also one or more authorized GM dealers within this district and GM has advertised in this district and has received

substantial revenue and profits from its sales and/or leasing of Class
Vehicles in this district; therefore, a substantial part of the events
and/or omissions giving rise to the claims occurred, in part, within
this district.

## PARTIES

17.   Plaintiff Kenneth Gay is, and at all relevant times was, a
citizen of the State of Arizona.

18.   Mr. Gay owns a 2014 Chevrolet Silverado, which he
purchased new around November of 2013, from Sands Chevrolet
Surprise in Surprise, Arizona. Mr. Gay's Class Vehicle was designed,
manufactured, distributed, advertised, marketed, warranted, and
certified by GM, and bears the Vehicle Identification No.
3GCUKSEC2EG189098.

19.   Mr. Gay purchased his Class Vehicle for his personal,
family, and household use.

20.   In or around June 2017, Mr. Gay's Vehicle's AC System
failed. At the time, the Vehicle had about 50,000 miles on it.

21.   Mr. Gay took his Vehicle to Sands Chevrolet Surprise in
Surprise, Arizona, to report the AC System failure. The dealership
diagnosed the problem as the AC System leaking, which allowed
refrigerant to leak out of the System, causing the failure.

22.   Because the replacement parts were on national backorder, Mr. Gay would have had to pay around $1,500 and wait several weeks before his Vehicle could be repaired. To avoid having a vehicle without a working AC System in the Arizona heat, while waiting for replacement parts, Mr. Gay was forced to elect the cheaper, more timely solution to have his Vehicle sent out to be rebuilt.

23.   Mr. Gay paid around $700.00 out of pocket for the repair to the AC System in his Vehicle.

24.   Mr. Gay expected his Class Vehicle to be of good and merchantable quality and not defective. He had no reason to know of, or expect, that his Vehicle's AC System would crack, leak refrigerant, lose pressure, and fail to function, nor was he aware from any source prior to purchase of the unexpected, costly, and backordered repairs he would have to make on his Vehicle's AC System simply to have it function. Had he known these facts, he would not have bought his Class Vehicle or would have paid less for it.

25.   Prior to purchasing his vehicle, Mr. Gay test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with GM sales representatives regarding the vehicle's features. Never was it disclosed or revealed that the AC System was defective and prone to premature failure.

26.    Defendant General Motors Company is, and at all relevant times was, a citizen of the State of Delaware and of the State of Michigan, as it is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Michigan.

## FACTUAL ALLEGATIONS

27.    Plaintiff is informed and believes that, because of the AC System Defect, the AC Systems in the Class Vehicles are predisposed to leak refrigerant, lose pressure, and fail to  function under normal-use conditions that would not cause non-defective AC Systems to fail, compromising the comfort, safety, and enjoyment of Vehicle occupants, including Class  Members, and requiring them to wait unreasonable amounts of time for repairs and pay out-of-pocket to replace broken AC System parts with equally defective replacement parts, leaving their AC Systems susceptible to repeated failures.

I.    **THE AC SYSTEM DEFECT.**

28.    The AC System in the Class Vehicles is a pressurized, self-contained system composed of three main components: the compressor, the condenser, and the evaporator, which  are connected by hoses and lines to each other. A generalized diagram of the type of air conditioning system found in the Class Vehicles is

below, with component parts labeled and refrigerant flow path and temperature indicated by colored arrows.



29.     A chemical refrigerant flows through the AC System, alternating between a liquid and a gas depending on the pressure it is subjected to in the various components it flows through during its continuous cycle through the System.

30.     The compressor is responsible for compressing the refrigerant gas. Compression causes the refrigerant to get very hot.

The hot, compressed refrigerant gas is then sent through the condenser.

31.    The condenser is a series of coils that outside air passes over to remove the heat from the compressed refrigerant gas. This causes the refrigerant gas to cool and condense into a cold liquid. The cold liquid refrigerant then passes through the receiver-drier, a canister containing desiccant to absorb moisture, and then through an expansion valve to change it from a high-pressure liquid to a low-pressure liquid mist before entering the evaporator.

32.    The evaporator is an array of tubes that the refrigerant liquid mist flows through, chilling the tubes. As the low-pressure liquid refrigerant mist flows through the evaporator, a blower motor pushes air across the cold tubes of the evaporator to deliver cooled air into the passenger compartment of the automobile.

33.    The AC System is entirely sealed off and must remain so in order to maintain the pressures necessary to allow the System to function properly and produce cooled air for the passenger cabin.

34.    On information and belief, the AC System is not sufficiently strong and durable to withstand the internal pressures

and external forces the System can be expected to encounter under normal use and conditions. This insufficiency leads to System parts cracking, which allows refrigerant to leak out of the System and causes the System to lose pressure, which results in failure of the AC System to produce cool air.

35. GM knew or should have known that having insufficiently strong and durable AC System components could lead to cracking, refrigerant leaks, lost pressurization, and AC System failure under normal use and conditions.

36. The AC System failure can first occur at low mileages, within the warranty period.

37. Moreover, GM's replacement of faulty AC System components with equally defective replacement parts leaves the AC System susceptible to repeated failure and thus does not permanently remedy the AC System Defect.

38. When GM refuses to cover the cost to repair the AC System, consumers are forced to pay between $150 and $2000 out of pocket, yet the repair is done with the same defective GM parts, and consumers still are subjected to the same long wait times for backordered parts.

39.   In or around November 2017, GM issued a notice to some Class Members acknowledging that certain Class Vehicles "may have a condition" that "creates a crack" that allows refrigerant to leak out, causing AC System failure, and offering to cover repairs related to the issue under limited circumstances. However, GM's "special coverage program" offered in the November 2017 notice is inadequate because it does not cover all Class Vehicles and it does not offer a permanent, free-of-charge fix for the Defect for all Class Members.

## II.   THE AC SYSTEM DEFECT POSES A SAFETY RISK TO VEHICLE DRIVERS AND OCCUPANTS.

40.   The AC System Defect poses a safety risk to Vehicle occupants because a Vehicle with a non-functioning AC System subjects occupants to unsafely high temperatures, and can create a visibility issue if windows fog up and cool air from the AC System is not available to de-fog the windows.

41.   Numerous GM owners and absent Class Members have told NHTSA, and GM directly, that the AC System Defect poses a safety risk, as illustrated by the following examples:

> "I was informed that the [2015 Chevrolet Tahoe] air condenser is a faulty part and is not working on my vehicle. Also, GM has knowledge of this issue, for it is a known issue with Chevrolet Tahoe. The part to fix this

problem is on back order, and there are no parts in production, for they have not come up with a remedy to replace the faulty part. Therefore, I do not have air conditioning within my vehicle. Thus, **causing a safety issue, for it is 90 degrees where I live, and I have infant twins** that are transported with my vehicle."

http://www.carproblemzoo.com/chevrolet/tahoe/air-conditioner-problems.php (posted May 2017).

"I have been waiting to get my [2014 GMC Sierra 1500 Sierra 15500 Denali 6.2L] air conditioner fixed now for months and I keep getting told there are no Condensers available. I have talked with service writers at GM dealership's well as other Sierra owners and they all have the same problem for the most part. This needs to be put on a recall list or I have decided to file a class action lawsuit in this matter regarding all Sierra owners across the country. I, as well as I am sure other people, have **serious breathing issues in hot weather** and need my truck fixed promptly..."

http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml (posted May 2016).

"I have been a GMC Customer since 1976 and have purchased a total of six new trucks over the years. … SO when I laid down over 50K I expected it to be something I could feel good about driving & never expected it to be a death trap that would be best used as a boat anchor for the cargo ships carrying imported vehicles. This [2014 GMC Sierra 1500 LX 5.3L] Model Year is **unsafe** and should

13

not have been made available until it had been properly tested and **GMC should be more focused on the safety of the Customer** .... At just over 36k miles 36500 my A/C suddenly started blowing hot air. I had just had it serviced by the dealership and not sure what caused the problem. … This is something that GMC should be covering. … I called GMC and began the formal complaint process and was pretty much blown off and haven't heard anything back from them. **With the amount of money I paid for this truck I should be safe and comfortable and have something of value**. I feel like I have been taken for my money and want what I paid for…"

http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml (posted September 2016).

"I need my [2015 Chevrolet Tahoe LT 3.2L V6] air fixed bad. It's entirely **too hot to be riding around with no cooling system** and defrost. I've only had vehicle for 1yr."

http://www.carcomplaints.com/Chevrolet/Tahoe/2015/AC_heater/ac_stopped_working.shtml (posted June 2017).

"GM condenser issue. GM has a known issue with 2014-2016 [Chevrolet Tahoe] models using a defective condenser. They have a new part# that is on national backorder and are unwilling to do anything for their customers waiting for the part. I was driving down the freeway, kids in tow, on a rainy muggy day ... **My windshield began to fog and with no condenser to run the AC I was unable to [de-fog] my windows**. Unable to see a thing I had to pull over, on the freeway, carefully,

and find a child's coat in the very back to wipe down the windows to [create] visibility. **This is a safety issue** and clearly negligence on GM's part and they would be held liable if/when **this creates a serious accident**."

NHTSA ODI 10994971 (incident date June 13, 2017).

 "I'm a frustrated customer with a 2015 Chevy Suburban looking for some assistance with the air condenser on my vehicle. I have gone almost 2.5 months without a/c and I am incredibly disappointed to be have been going so long without something as basic as a/c. I have 3 small children and it's incredibly uncomfortable in the vehicle now that it's summer temperatures… On an unexpectedly cool day like today with outdoor temps at 67 the driver side foot area is 98 degrees because of hot air blowing which I assume comes from the engine. I shut off all the vents and fans and it still blows. On days when it's warmer that floor temp is more like 114-118 degrees and it's causing pain and burning sensation to my feet. I've contacted my dealership and they offered me to end my lease early and get into a new suburban. I've been so disappointed with the way this has been handled. I have never been so unsatisfied as customer for such a long period of time. I feel like I should be reimbursed for the two visits for diagnostics on the vehicle to find out why the a/c wasn't working and the rental car I needed. I also feel like I shouldn't have to be paying my lease payments for a faulty vehicle for the last few months that it hasn't been functioning properly. Lastly, I would like the option of ending my lease early without penalty to get into a more comfortable vehicle of my choice. I've

contacted GM customer service only to be told there's nothing they can do unless GM decides that this should be a recall. Frankly, this is a problem amongst many vehicles in the GM line. This is frustrating and is really **becoming a safety issue as temperatures rise. I am genuinely concerned for my family's safety** and I am **frustrated with the overall lack of urgency on this issue**."

NHTSA ODI 11001813 (incident date March 23, 2017).

### III. GM KNEW OF THE AC SYSTEM DEFECT PRIOR TO SALE OR LEASE OF THE CLASS VEHICLES

42. On information and belief, GM learned of the AC System Defect at least as early as 2013, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles, through sources such as pre-release evaluation and testing; investigations leading to dealer service bulletins; repair data; replacement part sales data; early consumer complaints made directly to GM, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from GM dealers; as well as through other internal sources unavailable to Plaintiff prior to discovery.

### A. GM'S KNOWLEDGE OF THE AC SYSTEM DEFECT GAINED FROM PRE-RELEASE DESIGN, MANUFACTURE, ENGINEERING, AND TESTING DATA

43.    During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, GM necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's AC Systems, particularly the basic engineering principles behind the construction and function of the Systems and the expected conditions and uses the Systems would encounter in ordinary customer service.

44.    An adequate pre-release analysis of the design, engineering, and manufacture of the AC Systems in the Class Vehicles would have revealed to GM that the AC Systems were defective and susceptible to cracking, leaking refrigerant, and failing to provide cool air into the passenger cabin.

### B. GM'S KNOWLEDGE OF THE AC SYSTEM DEFECT FROM TECHNICAL SERVICE BULLETINS

45.    GM's knowledge of the AC System Defect is demonstrated by Technical Service Bulletins ("TSB") issued by GM concerning the Defect.

46.    Upon information and belief, GM issued Technical Service Bulletins to its dealerships and service centers describing problems with and failures of the AC System, which indicate GM's knowledge of the AC System Defect.

47.    On October 6, 2014, GM issued bulletin #PIT5331 covering 2015 Escalades, Suburbans, Tahoes, and Yukons, and 2014-2015

Silverados and Sierras. The bulletin concerned cracks in the AC System components that allow refrigerant to leak out, resulting in a "very low/empty refrigerant level" and the AC System "blowing warm" air instead of producing cold air. This bulletin instructed service technicians to replace the compressor-to-condenser line and install a line bracket in the AC System.

48.    On May 29, 2015, GM issued bulletin #PIE0340 covering 2015 Escalades, Silverados, Suburbans, Tahoes, Sierras, and Yukons. The bulletin concerned "A/C not performing," which could be noticed prior to purchase/lease of the Vehicle, "during Pre-Delivery Inspection" of the Vehicles.

49.    On information and belief, TSBs and similar bulletins are issued only after significant investigation into the issue by GM. Given that the first of these TSBs was issued in Fall 2014, it is evident that GM knew about the AC System failures as early as 2013 and was investigating them prior to issuing the first TSB addressing the Defect in 2014.

## C.    GM'S KNOWLEDGE OF THE AC SYSTEM DEFECT FROM REPAIR DATA

50.    GM also knew or should have known about the AC System Defect because of the large number of claims for AC System repairs

and part replacements made during the Class Vehicles' warranty periods.

51.     Consumers complain that the AC System Defect often causes AC System failures at low mileages, within the warranty period.

52.     Upon information and belief, GM collects, reviews, and analyzes detailed information about repairs made on vehicles still under warranty at its dealerships and service centers, including the type and frequency of such repairs. Complete data on such repairs is exclusively within GM's control and unavailable to Plaintiff without discovery.

**D.  GM'S KNOWLEDGE OF THE AC SYSTEM DEFECT GATHERED FROM THE LARGE NUMBER OF REPLACEMENT AC SYSTEM PARTS ORDERED FROM GM**

53.     Upon information and belief, GM also knew or should have known about the AC System Defect because of the higher than expected number of replacement AC System parts ordered from GM, which should have alerted GM that this was a Defect affecting a wide range of its Vehicles.

54.     Upon information and belief, GM service centers use GM replacement parts that they order directly from GM. Therefore GM would have detailed and accurate data regarding the number and

frequency of replacement part orders. The ongoing high sales of replacement AC System parts – indeed so much so that the parts were (and continue to be) on national backorder – was certainly known to GM, and should have alerted GM that its AC Systems were defective and causing Class Vehicles' AC Systems to fail.

### E. GM'S KNOWLEDGE OF THE AC SYSTEM DEFECT GAINED FROM CLASS MEMBER COMPLAINTS MADE DIRECTLY TO GM

55. GM also knew or should have known about the AC System Defect because numerous consumer complaints regarding failures of the AC System were made directly to GM. The large number of complaints, and the consistency of their descriptions of the AC System failures in the Class Vehicles, should have alerted or actually alerted GM to this serious Defect affecting a wide range of its Vehicles.

56. The full universe of complaints made directly to GM about the AC System Defect is information presently in the exclusive custody and control of GM and is not yet available to Plaintiff prior to discovery. On information and belief, however, many Class Vehicle owners complained directly to GM and GM dealerships about the AC System failures their Vehicles experienced. For example, some instances of these direct-to-GM complaints were posted online on GM's own website forums, and responded to by GM customer service:

"We bought our 2014 Chevy Z71 LTZ 4 Door 1/2 ton truck last June when they first came out. … now that we've had it just over a year, putting some miles on it (almost 34,000), and the warranty is about over with, the AC has gone out on us. The AC is just blowing hot air. Had been working fine up until this afternoon. The controls all work, the vents change as they should, just no cool air. … We are going to take it to a dealer for repair but our experience with these dealers so far has not been a good one.... No loaner car and a week wait to find the problem is a bit frustrating for someone who just spent $40,000 on their product."

https://chevroletforum.com/forum/2014-gmtk2xx-110/2014-silverado-ac-problems-already-67170/ (posted August 4, 2014).

An official GM representative from Chevrolet Customer Care

responded to the post on August 6, 2014.

"I bought a 2014 Silverado about 5 months ago. For the most part I have really enjoyed it. On Wednesday I noticed the air conditioning was not working. It was only blowing hot air. I immediately took it to the dealer in Murray Utah who diagnosed the problem as a faulty compressor. He said they could fix it under warranty but they didn't have the parts and would have to order them in from Denver. He told me to bring the vehicle back on Thursday. I came back on Thursday only to be told that they had missed the order deadline the day before so no parts. He told me to come back Friday. In the meantime it is 90 degrees outside and the

21

black interior of the truck is scalding hot. I went back Friday (yesterday) to be told that the compressor had come in but a valve they need had not come in. He told me to come back Saturday (today). I am told that the parts are now all here and it will take 4 hours to fix. I told him that I was surprised to have a compressor go out on such a new vehicle and I asked him if he was seeing a lot of these compressor problems and he said it was the second this week."

https://chevroletforum.com/forum/2014-gmtk2xx-110/2014-silverado-ac-problems-already-67170/ (posted September 27, 2014).

"Well I just had another bad experience with the AC [in 2015 Tahoe LTZ]. …It was set on auto 74 degrees and 90 degrees outside. It would blow cool air for about a minute from the front vents at full fan speed, then the fan speed would back down to low with warm air and then switch to full fan speed and the air would blow cool air from the vents at your feet with just a trickle of warm air coming from the front vents then it would start the process all over again. This continued for about 30 minutes during my drive to the Dealer and about 30 more minutes with the service adviser in the vehicle. No cold air at anytime during that hour. Diagnosis: operating as designed. Are you kidding me."

http://www.tahoeyukonforum.com/threads/a--not-working.61544/page-4 (posted October 29, 2014).

An official GM representative from Chevrolet Customer Care responded to the posts on this thread as well.

57.    Other instances of these direct-to-GM complaints are

described in Class Vehicle owners' complaints logged with NHTSA ODI

and posted on online vehicle owner forums:

> "At 48,000 miles, the [2015 Chevrolet Suburban]
> AC condenser has cracked, and the dealer has
> told us this is a manufacturer's problem. The
> replacement part is on national backorder, and
> we have waited 5 weeks for the replacement part
> to come in. Neither the dealer nor GM can tell us
> when the replacement part will arrive. **I have
> filed a complaint with GM**, and the case no. is
> 8- 3029151511."

> NHTSA ODI 10995213 (incident date May 2,
> 2017).

> "I have been a GMC loyal owner for many years.
> We purchased the extended warranty. The
> problem is the [GMC Sierra 1500 V8] ac quit
> working and only blows hot air. I live in Orlando
> FL where it is 95+ degrees daily plus humidity. My
> ac has not been working for at least 3 weeks! I
> took it to the shop and they kept it for a couple of
> days and had me pick it up saying the part had to
> be ordered. That problem I am told is that **many
> other GMC owners are having issue** and the
> part is back ordered. It actually has to be made
> and they can give me no idea when the part will be
> available. Meanwhile I am told that there are
> some 2000+ other owners waiting as well. This is
> not acceptable! Meanwhile payments are still
> being made for a vehicle that I paid $43,000 for
> because I work hard everyday and at the very
> least deserve to drive to work in comfort paying

that amount of money. I live in an area where the traffic is awful and drive in bumper to bumper on I4. That is maddening with[out] an a/c. So windows are down and I get to inhale the exhaust from all the other vehicles on the road. Meanwhile the only calls I get from GMC is to purchase a new vehicle from them. The only incentive they offer is a $1000.00 off loyalty certificate. Really? Who in their right mind would buy another vehicle from them when **they have no solution and no concern**. I want to find a way to let unsuspecting new buyers know how much GMC cares when you have a problem and that is not at all! I called the dealership again today because I have heard nothing from them in a week and a half. The same exact response was given to me again. **The part is ordered. It has not been made and there is no time line when you might get your AC working again**. Thank GMC"

http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_h eater /AC_not_working.shtml (posted April 2017; updated June 2017).

 "Same issue as all the rest: 1.) [2015 Chevrolet Tahoe LT] A/C stops working 2.) Mechanic replaces [refrigerant] but can't find a leak in the lines 3.) A/C is blowing hot air again after 3 days; [refrigerant] completely gone 4.) Mechanic runs dye through lines to find the leak, replaces [refrigerant] again 5.) A/C is blowing hot air again after 2 days; [refrigerant] completely gone 6.) Mechanic notes a Technical Service Bulletin (TSB) and **widespread complaints of issue**...suggests browbeating Chevy dealer over the issue, given how new the truck is. 7.) **Issue raised with**

**Chevy dealer...no response**… Probably the last GM vehicle I will ever purchase."

http://www.carcomplaints.com/Chevrolet/Tahoe/201 5/AC_heater/a c_stopped_working.shtml (posted May 2017).

58.    As the above sampling of complaints shows, Class Members have been vocal in complaining directly to GM about the AC System Defect, and the number and consistency of their complaints should have alerted GM about the AC System Defect.

## F.   GM'S KNOWLEDGE OF THE AC SYSTEM DEFECT FROM CLASS MEMBER COMPLAINTS COLLECTED BY NHTSA'S OFFICE OF DEFECT INVESTIGATIONS

59.    In addition to complaints made directly to GM, many Class Vehicle owners and lessees lodged complaints about the AC System Defect with NHTSA ODI.

60.    Federal law requires automakers like GM to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

61.    Thus automakers should (and do) monitor NHTSA databases for consumer complaints regarding their automobiles as

part of the automakers' ongoing obligation to identify potential defects in their vehicles, such as failures of AC Systems to emit cold air as intended.

62. From its monitoring of the NHTSA databases, GM knew or should have known of the many complaints about AC System Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, GM to the AC System Defect.

63. A sampling of the publicly available complaints lodged with NHTSA ODI, includes some of those quoted above, as well as the following:

> "The [caller] owns a 2015 Cadillac Escalade ESV. While driving in the rain, the air conditioner condenser fractured and the air conditioner failed to work. The **failure caused the windows to fog up and impaired the driver's visibility**. The vehicle was taken to the dealer … who stated that the part was unavailable. The **failure recurred**. The **manufacturer was made aware of the failure and stated that it was a known issue.** The manufacturer provided the contact a rental vehicle for three days. The vehicle was repaired after seven weeks when the part was located. The cause of the failure and repair part were not provided. The failure mileage was approximately 7,500."

NHTSA ODI # 11005298 (incident date March 23, 2017).

"The [2015 GMC Yukon] air conditioner condenser failed. The part is on backorder and I have no air conditioning for an undetermined amount of time. No eta on the part and **they will replace the part with the same faulty model**. No loaner car, no air-conditioning."

NHTSA ODI # 11006147 (incident date July 8, 2017).

"[2015 GMC Yukon] air conditioner condenser failed. Replacement part is on national back order we have been waiting **5 weeks so far and no update from GM**."

NHTSA ODI # 10991649 (incident date April 10, 2017).

"[2015 Cadillac Escalade] air conditioning stopped working in May 2017. Called the dealership and they told me that there was a high number of cars coming back with the same problem-asked me to come in so they could assess. Came in-20 minutes later-they informed me that my issue was the same. Condenser was out. Part was back ordered. **I've now waited for 8 weeks and the part is still back ordered and GM is refusing to give us an ETA when its available**. Driving with no AC during the summer in high temps and on the freeways has now aggravated my daughter's allergies and she is now on medication. Can't seem to get any answer from gm and it's not just me."

NHTSA ODI # 11010423 (incident date May 30, 2017).

"[2015 Chevrolet suburban] air conditioning condenser is faulty vehicle is covered bumper to bumper under warranty and no replacement is available. No rental car offered, no date of repair is available. **Driving with no air conditioning in the heat is miserable.**"

NHTSA ODI # 11002905 (incident date June 5, 2017).

"There was a not any big event that caused it. [2015 Chevrolet suburban] air conditioning was blowing cold air on Monday June 26, 2017; on Tuesday June 27, 2017 it was warm air even after driving around for 6 minutes. Immediately took it to the dealer we purchased it from: Priority Chevrolet. The condenser had stopped working. Couldn't hold [refrigerant] because there was a hole in it. ... ?!?!?! Not sure of the cause. My car is barely 2 years old! I have four young children in the middle of summer initially we were told 1-2 month wait!? **Apparently this isn't the first condenser they have had to replace.** Tells me something isn't right with Chevrolet."

NHTSA ODI # 11001975 (incident date June 27, 2017).

"National a/c condenser backorder: today marks 21 days without an a/c condenser on my car [2015 Chevrolet suburban]. I have a small child (15 months old) and GM has no idea when an a/c condenser will be available. I am the 6th person at my local dealership to need one, the 3rd one at a local automotive garage. **GM says they have not heard of this issue** but a small google search will show there is a very large issue

across the nation, hence the national backorder
on the part. I have tried calling various
Chevrolet dealership trying to locate this part."

NHTSA ODI # 10992401 (incident date May 10,
2017).

64.     As the above sampling of complaints makes clear,

consumers have been vocal in complaining to NHTSA ODI about the

AC System Defect and GM was, or should have been, aware of and

monitoring those complaints, and thus should have known about the

AC System Defect.

## G.     GM'S KNOWLEDGE OF THE AC SYSTEM DEFECT GLEANED FROM CLASS MEMBER COMPLAINTS ON PUBLIC ONLINE FORUMS

65.     In addition to complaints made directly to GM and

collected by NHTSA ODI, many Class Vehicle owners and lessees

posted complaints about the AC System Defect on public online

vehicle owner forums. The following is a small sampling of such

complaints:

"2014 Sierra SLT … I was heading out this
morning to take the youngest daughter to move
into her apartment where she is going to school.
3 hrs away. All is fine then about 1 1/2 hrs into
our journey noticed the air was not as cold as it
had been from the A/C. Well, nothing I did
helped to get it cooler, just getting hotter.
Blowing just fine. …We had to lower the
windows. Getting to be about 95 outside and

29

more miserable by the mile. And traffic was moving slowly. By the time we made it to our destination it was a 100 or hotter outside. This started happening at mileage 11950. … temp outside at one point showed 111 per my nifty pickup thermometer. Anyway it was just miserable. This all started about 1030 this morning and had to leave the windows down all day that we were in the pickup. Finally made it home tonight about 9pm with outside temp of 94.The **AC is dead in the water with almost a year on her and a little less than 12k miles**. I have never had a vehicle lose the AC before and I have had MANY new vehicles."

http://www.gm-trucks.com/forums/topic/163791-well-have-a-problemno-ac33/ (posted August 17, 2014).

"Bought a 2014 GMC Sierra SLE Crew Cab from Tulley GMC in Nashua about a month ago. I also bought the extended warranty, thank GOD!!!! A couple weeks ago, started noticing the AC wasn't blowing icy cold air. Took it to the service department and the problem is the AC condenser. They said it is covered under my warranty but the part is 'back ordered'. I've been reading some comments online about other people with this same issue. I'm getting a little nervous because I'm seeing **people that have been waiting months and still no AC condensers available**. I have a pregnant girlfriend at home and if I need to drive us somewhere, I need AC at least for her. The dealer did give me a loaner and say that I can stay in it for as long as it takes but I'm pissed because I just bought the truck and I'm paying $500 a month to drive around in a Terrain while my truck sits in their back parking lot. Anyone

have any luck with a dealer actually getting their hands on a AC condenser?"

http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml (posted June 2017).

 "Purchased 2015 Chevy Tahoe LTZ new, 3 years ago. Air conditioning not working and told it needs a condenser. **Part is on back order with no delivery date available due to the high number of 2015 Tahoes that are waiting for this part**. Went online to see if anyone else is having this problem with the same make/model/year and the number is astonishing. This was a brand new model and first year offered from Chevy so there is obviously a manufacturing issue. Car warranty is expired and **was told part would be over $2000**!"

http://www.carproblemzoo.com/chevrolet/tahoe/air-conditioner-problems.php (posted March 2017).

 "2014 GMC Sierra [1500], had to replace the AC Condenser (3 yr. old truck), cost $1000. **2 weeks after it was replaced the AC quit working again**. Brought it back in, had to have a High Side Line Hose replaced, $300 more dollars to fix. No recall on an issue that seems to be a common problem with these trucks. Disgusting."

http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml (posted June 2017).

66.   As shown by this small sampling of complaints from vehicle owner forums consumers have been vocal in complaining

about the AC System Defect and the AC failure it causes. A multi-billion dollar automaker like GM undoubtedly had and has a marketing department that tracks such sites and should reasonably have been aware of the AC System Defect in the Class Vehicles.

67.    In sum, as early as 2013, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles, GM was aware of the AC System Defect, should have been aware of the AC System Defect through the exercise of reasonable care, and/or was negligent in failing to be aware of the AC System Defect, based on, among others, the following sources:

a.    Pre-release design, manufacturing, engineering, and testing data;

b.    Service bulletins sent by GM to its dealerships evincing knowledge of ongoing issues with AC Systems in the Class Vehicles;

c.    Detailed data gathered by GM about large number of AC System Defect repairs;

d.    Knowledge GM had of the large number of replacement AC System parts ordered from GM;

e.    Numerous and consistent consumer complaints made directly to GM about the AC System Defect;

f.   Numerous and consistent consumer complaints collected by NHTSA ODI  about the AC System Defect;

g.   Numerous and consistent consumer complaints made on online vehicle  owner forums; and

h.   GM service center employees' familiarity with and knowledge of the AC  System Defect.

68.   Moreover, the large number and consistency of Class Member complaints  describing the AC System's propensity to crack, leak refrigerant, lose pressure, and fail to function underscores the fact that Class Members considered the AC System Defect to be a  material safety issue to the reasonable consumer.

## IV.   GM RECEIVED PRE-SUIT NOTICE MULTIPLE TIMES AND WAYS

69.   In addition to other forms of notice, including those detailed in this Complaint,  GM was put on notice of Mr. Gay's claims in November 2017 when Mr. Gay took his Vehicle to Sands Chevrolet Surprise to report his Vehicle's AC System failure.

## V.   APPLICABLE WARRANTIES

70.   GM sold and leased the Class Vehicles with a written express warranty covering the Vehicles for three years or 36,000 miles, whichever comes first.

71.     GM's New Vehicle Limited Warranty expressly "covers repairs to correct any vehicle defect" and states that repairs will be done within a "reasonable time."

72.     The same warranties are made in GM's Certified Pre-Owned ("CPO") 12- Month/12,000 Mile Bumper-to-Bumper Limited Warranty.

73.     GM also provides an express written warranty with all GM "Original Equipment" replacement parts. The AC System component parts are covered by GM's "Limited Lifetime Parts Warranty," which promises that GM will repair or replace, free of all charges except labor, any covered part that was originally installed by a GM dealership at the consumer's expense.

## VI.     GM'S MARKETING AND CONCEALMENT

74.     Upon information and belief, GM knowingly marketed and sold/leased the Class Vehicles with the AC System Defect, while willfully concealing the true inferior quality and sub-standard performance of the Class Vehicles' AC Systems.

75.     GM directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

76.    GM's marketing material describes the various Class Vehicles as "reliable," "durable," with "functional," "customer-focused" interior AC Systems.

77.    In practice, the Class Vehicles are not as comfortable or reliable as GM's marketing suggests. GM concealed the fact that the Class Vehicles instead not even comfortable or enjoyable under ordinary conditions because the AC Systems repeatedly and consistently leak refrigerant, lose pressure, and fail to provide cool air into the passenger cabin.

78.    Plaintiff and Class Members were exposed to GM's long-term, national, multimedia marketing campaign touting the supposed quality, safety, and comfort of the Class Vehicles, and Class Members justifiably made their decisions to purchase or lease their Class Vehicles based on GM's misleading marketing that concealed the true, defective nature of the Class Vehicles.

79.    Further, GM knowingly misled Class Members about the true, defective nature of the Class Vehicles. As detailed above, upon information and belief, GM has been aware of the AC System Defect since at least 2013, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles, through pre-release evaluation and testing; investigations resulting in TSBs; the high number of AC System repairs and replacement part sales; and the

numerous and consistent complaints about the AC System Defect made directly to GM, collected by NHTSA, and posted in public online forums.

80.   In sum, GM has actively concealed the existence and nature of the AC System Defect from Class Members since at least 2013 despite its knowledge of the existence and pervasiveness of the AC System Defect. Specifically, GM has:

a.   Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the AC System Defect;

b.   Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' AC Systems were defective and not fit for their intended purposes;

c.   Failed to disclose, and actively concealed, the fact that the Class Vehicles' AC Systems were defective, despite that GM learned of the AC System Defect as early as 2013, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles;

d.   Failed to disclose, and actively concealed, the existence and pervasiveness of the AC System Defect even when directly asked about it by Class Members during communications with GM, GM Customer Care, GM dealerships, and GM service centers;

e.   Actively concealed the AC System Defect by forcing Class Members to bear the cost of temporary "fixes" while at the same time performing those "fixes" at no (or lower) cost for those who complained vocally and often, and calling these "goodwill" services; and

f.   Actively concealed the AC System Defect by consistently treating the failures with temporary "fixes," so that the AC System Defect is not permanently corrected in Class Members' vehicles, even though Class Members were led to believe that the "fixes" had cured the AC System Defect in their Vehicles.

81.   By engaging in the conduct described above, GM has concealed the AC System Defect from Class Members. If Class Members had had knowledge of the information GM concealed, they would not have purchased or leased the Class Vehicles or would have paid less to do so.

## FRAUDULENT CONCEALMENT ALLEGATIONS

82.   Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at GM responsible for disseminating false and misleading marketing materials regarding the Class Vehicles. GM necessarily is in possession of all of this information. Plaintiff's claims arise out of GM's fraudulent concealment of the AC

System Defect, and its representations about the quality, safety, and comfort of the Class Vehicles. To the extent that Plaintiff's claims arise from GM's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claims. Plaintiff alleges that at all relevant times, including specifically at the time he purchased his Class Vehicle, GM knew, or was reckless in not knowing, of the AC System Defect; GM was under a duty to disclose the Defect based upon its exclusive knowledge of it, and its concealment of it; and GM never disclosed the Defect to Plaintiff or the public at any time or place or in any manner.

83.    Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to GM:

a.   ***Who***: GM actively concealed the AC System Defect from Plaintiff and Class Members while simultaneously touting the safety, comfort, sophistication, and quality of the Class Vehicles, as alleged in this Complaint. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at GM responsible for such decisions.

b.   ***What***: GM knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the AC System Defect, as alleged in this Complaint. GM concealed the Defect and made

representations about the safety, comfort, sophistication, world-class quality, and other attributes of the Class Vehicles, as specified in this Complaint.

c. **When**: GM concealed material information regarding the Defect at all times and made representations about the quality, safety, and comfort of the Class Vehicles, starting no later than 2013, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged in this Complaint. And when consumers brought their Vehicles to GM complaining of the AC System failures, GM denied any knowledge of or responsibility for the AC System Defect.

d. **Where**: GM concealed material information regarding the true nature of the Defect in every communication it had with Plaintiff and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing, in which GM disclosed the truth about the Defect in the Class Vehicles to anyone outside of GM. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on GM's website.

e.    ***How***:  GM concealed the AC System Defect from Plaintiff and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles.  GM actively concealed the truth about the existence and nature of the Defect from Plaintiff and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and GM promised in its marketing materials that Class Vehicles have qualities that they do not have.

f.    ***Why***:  GM actively concealed material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the quality, safety, and comfort of the Class Vehicles. Had GM disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class Members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Vehicles or would have paid less for them.

## TOLLING OF THE STATUTE OF LIMITATIONS
## <u>FRAUDULENT CONCEALMENT TOLLING</u>

84.   Upon information and belief, GM has known of the AC System Defect in the Class Vehicles since at least 2013, and certainly well before Plaintiff and Class Members purchased or leased their Class Vehicles, and yet has concealed from or failed to notify Plaintiff, Class Members, and the public of the full and complete nature of the AC System Defect.

85.   Any applicable statute of limitation has been tolled by GM's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

## <u>ESTOPPEL</u>

86.   GM was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Class Vehicles. GM actively concealed the true character, quality, and nature of the Class Vehicles and knowingly made representations about the world-class quality, sophistication, state-of-the-art safety, and comfort of the Class Vehicles. Plaintiff and Class Members reasonably relied upon GM's knowing representations and active concealment of these facts. Based on the foregoing, GM is estopped from relying on any statutes of limitation in defense of this action.

**DISCOVERY RULE**

87.   The causes of action alleged herein did not accrue until Plaintiff and Class Members discovered that their Class Vehicles contained the AC System Defect.

88.   Plaintiff and Class Members had no realistic ability to discern that the Class Vehicles were defective until – at the earliest – after the AC System Defect caused their AC Systems to leak refrigerant, lose pressure, and fail to function. Even then, Plaintiff and Class Members had no reason to know the AC System failures were caused by a defect in the Class Vehicles because of GM's active concealment of the AC System Defect.

89.   Plaintiff and Class Members were not reasonably able to discover the AC System Defect until after they had purchased or leased their Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that the AC System Defect caused their Vehicles' AC Systems to leak refrigerant, lose pressure, and fail to function.

**CLASS ACTION ALLEGATIONS**

90.   Plaintiff brings this action on his own behalf and as a class action on behalf of the following class:

> All persons in the State of Arizona who purchased or leased a Class Vehicle with the Air Conditioning System. A "Class Vehicle" is a vehicle of any of the following models/model

years: 2015-2017 Cadillac Escalade, 2014-2016 Chevrolet Silverado 1500, 2015-2017 Chevrolet Suburban, 2015-2017 Chevrolet Tahoe, 2014-2017 GMC Sierra 1500, 2015-2017 GMC Yukon.

91.    This action is properly maintainable as a class action under Fed. R. Civ. P. 23(a) and (b)(3).

92.    The class consists of thousands of persons, such that joinder of all Class members is impracticable.

93.    There are questions of fact and law that are common to the Class members and that predominate over any questions affecting only individual members. These questions include, but are not limited to:

a.    whether the AC System in the Class Vehicles is defective;

b.    whether GM knew or should have known about the AC System Defect, and, if yes, how long GM has known of the Defect;

c.    whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle;

d.    whether GM had a duty to disclose the defective nature of the Class Vehicles to Plaintiff and Class Members;

e.    whether GM omitted and failed to disclose material facts about the Class Vehicles;

f.      whether GM's concealment of the true defective nature of the Class Vehicles induced Plaintiff and Class Members to act to their detriment by purchasing or leasing Class Vehicles;

g.      whether GM's representations and omissions about the true defective nature of the Class Vehicles were deceptive, within the meaning of the Arizona Consumer Fraud Act (ACFA);

h.      whether GM represented, through its words and conduct, that the Class Vehicles had characteristics, uses, or benefits that they did not actually have;

i.      whether GM represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another;

j.      whether GM advertised the Class Vehicles with the intent not to sell/lease them as advertised;

k.      whether GM's representations and omissions about the true defective nature of the Class Vehicles were likely to create confusion or misunderstanding;

l.      whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

m.  whether Plaintiff and the other Class Members are entitled to a declaratory judgment stating that the AC Systems in Class Vehicles are defective and/or not merchantable;

n.  whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

o.  whether GM should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the AC System Defect in the Class Vehicles; and

p.  whether GM is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace the defective AC Systems.

94.  The claims of the Plaintiff are typical of the claims of the proposed Class because they are based on the same legal theories, and Plaintiff has no interests that are antagonistic to the interests of the Class members.

95.  The Plaintiff is an adequate representative of the Class and has retained competent legal counsel experienced in class actions and complex litigation.

96.  A class action is an appropriate and superior method for the fair and efficient adjudication of this controversy, as the pursuit of

thousands of individual lawsuits would not be economically feasible for individual Class members and would cause a strain on judicial resources and increase the likelihood of varying outcomes, yet each Class member would be required to prove an identical set of facts in order to recover damages.

97. This action does not present any unique management difficulties.

## COUNT I – ARIZONA CONSUMER FRAUD ACT, A.R.S. § 44-1521 *et seq.*

98. Plaintiff incorporates the preceding paragraphs in this Complaint as if fully set forth below.

99. Plaintiff asserts this claim individually and on behalf of all Class members under the Arizona Consumer Fraud Act, A.R.S. § 44-1521 *et seq.*

100. GM is a "person" as defined by the ACFA. A.R.S. § 44-1521(6).

101. The Class Vehicles constitute "merchandise" as defined by the ACFA. A.R.S. § 44-1521(5).

102. The purchases and leases of Class Vehicles by Plaintiff and Class Members constitute "sales" as defined by the ACFA. A.R.S. § 44-1521(7).

103.  GM's representations, active concealment, failures to disclose, and omissions regarding the Class Vehicles constitute "advertisements" as defined by the ACFA. A.R.S. § 44-1521(1).

104.  GM's representations, active concealment, failures to disclose, and Material omissions  regarding the Class Vehicles violated the ACFA in the following ways:

a.  GM used or employed deception, deceptive or unfair acts or practices, fraud, false pretenses, false promises, and misrepresentations in connection with the sale or advertisement of the Class Vehicles (A.R.S. § 44-1522(A));

b.  GM concealed, suppressed, or omitted material facts with intent that others rely on such concealment, suppression, and omission, in connection with the sale or advertisement of the Class Vehicles (A.R.S. § 44-1522(A));

105.  GM's unfair and deceptive acts or practices occurred repeatedly in GM's course of trade or business, were material, were capable of deceiving a substantial portion of the  purchasing public, and as a result, caused ascertainable economic harm to purchasers and lessees of the Class Vehicles.

106.  GM knew, by 2013 at the latest, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' AC Systems suffered from an inherent defect, were defectively  designed or

manufactured, would fail repeatedly, and were not suitable for their intended use.

107. By 2013 at the latest, GM had exclusive knowledge of material facts concerning the existence of the AC System Defect in its Class Vehicles. Furthermore, GM actively concealed the Defect from consumers by denying the existence of the Defect to Class Members who contacted GM about their AC System failures, failing to provide a permanent remedy for the AC System Defect within a reasonable time under warranty, and replacing defect AC System components with the same defective replacement parts.

108. GM was under a duty to Plaintiff and Class Members to disclose the defective nature of the AC Systems, as well as the associated costs that would have to be repeatedly expended in order to temporarily address the failures caused by the AC System Defect, because:

a. GM was in a superior position to know the true state of facts about the AC System Defect in the Class Vehicles;

b. Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the AC System Defect until, at the earliest, the manifestation of the Defect; and

c.   GM knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the AC System Defect prior to its manifestation.

109.   In failing to disclose the defective nature of the Class Vehicles, GM knowingly and intentionally concealed material facts and breached its duty not to do so.

110.   The facts concealed or not disclosed by GM to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease a Class Vehicle. Moreover, a reasonable consumer would consider the AC System Defect to be an undesirable quality, as Plaintiff and Class Members did. Had Plaintiff and other Class Members known that the Class Vehicles had the AC System Defect, they would not have purchased or leased a Class Vehicle, or would have paid less for it.

111.   Plaintiff and Class Members are reasonable consumers who did not expect their Class Vehicles to contain a defective AC System. It is a reasonable and objective consumer expectation for consumers to expect the AC System not to leak refrigerant, lose pressure, and fail to function.

112.  As a result of GM's misconduct, Plaintiff and Class Members have been harmed  and have suffered ascertainable damages in that the Class Vehicles contain defective AC Systems and repeatedly spring leaks, lose pressure, and fail to function due to the AC System Defect, causing inconvenience, creating an uncomfortable and unhealthy environment for vehicle occupants, and causing Class Members to spend money, even when the Vehicle was still under warranty, to attempt to remedy the Defect.

113.  As a direct and proximate result of GM's unfair or deceptive acts or practices,  Plaintiff and Class Members have suffered and will continue to suffer ascertainable damages in  that they have a Vehicle with a defective AC System and they have experienced and may continue to experience their Class Vehicles' AC Systems leaking refrigerant, losing pressure, and  failing to function, for which there is no permanent fix.

## COUNT II – FRAUD BY CONCEALMENT

114.  Plaintiff incorporates the preceding paragraphs in this Complaint as if fully set forth below.

115.  Plaintiff asserts this claim individually and on behalf of all Class members.

116.   GM had a duty to disclose the AC System Defect in the Class Vehicles because, under Arizona law, even in the absence of a special relationship, a seller must:

a.   disclose enough information to prevent its statements from being misleading;

b.   disclose any condition or defect that it knows or should know about that renders the product defective or dangerous;

c.   disclose basic, material information if it knows that the buyer is about to act without knowledge of the information and is without reasonable means to acquire the information itself.

117.   GM concealed and suppressed material facts concerning the serious Defect causing Class Vehicles' AC Systems to leak refrigerant, lose pressure, and fail to function. Upon information and belief, the Defect lies in the AC System components located within the engine compartment of the Class Vehicles. GM knew that Plaintiff and Class Members would not be able to inspect or otherwise detect the Defect prior to purchasing or leasing the Vehicles.

118.  GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of GM vehicles that the Class Vehicles were world class, comfortable, warranted, and reliable vehicles and concealed the information in order to prevent harm to GM and its products' reputations in the marketplace and to prevent

51

consumers from learning of the defective nature of the Class Vehicles prior to their purchase or lease.

119.   These omissions were material to consumers, both because they concerned the quality of the Class Vehicles and because the omissions played a significant role in Plaintiff and Class Members' decisions to purchase or lease the Class Vehicles.

120.   GM further failed to disclose and/or denied the existence the Defect when Plaintiff and Class Members complained of their AC System's failure. As a result, Class Members were misled as to the true condition of the Class Vehicles once at the time of purchase or lease and again when the AC System failure was complained of to GM.

121.   Plaintiff and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased their Class Vehicles or would have paid less for them. Plaintiff and Class Members' actions were justified. GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or Class Members.

122.   Because of the concealment and/or suppression of the facts, Plaintiff and Class Members sustained damages because they negotiated and paid value for the Class Vehicles not considerate of the

AC System Defect that GM failed to disclose. Moreover, they paid for repairs, including for replacement of the defective parts with equally defective replacement parts or aftermarket parts.  Had they been aware of the concealed Defect that existed in the Class Vehicles, Plaintiff and Class Members would have paid less for their Vehicles or would not have purchased or leased them at all.

## COUNT III – UNJUST ENRICHMENT

123.  Plaintiff incorporates the preceding paragraphs in this Complaint as if fully set forth below.

124.  GM has been unjustly enriched by Plaintiff and Class Members purchasing/leasing Class Vehicles from GM and purchasing replacement parts and services from GM that Plaintiff and Class Members would not have purchased/leased but for GM's misconduct alleged above with respect to the AC System Defect.

125.  Plaintiff and Class Members unknowingly conferred a benefit on GM of which GM had knowledge, since GM was aware of the defective nature of the Class Vehicles' AC Systems, but failed to disclose this knowledge to Plaintiff and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

126.   The circumstances are such that it would be inequitable, unconscionable, and unjust to permit GM to retain the benefit of profits that it unfairly obtained from Plaintiff and Class Members. These profits include the premium price Plaintiff and the Class paid for the Class Vehicles and the cost of the parts and related services bought from GM to temporarily fix AC System.

127.   Plaintiff and Class Members, having been damaged by GM's conduct, are entitled to recover or recover damages as a result of the unjust enrichment of GM to their detriment..

## RELIEF REQUESTED

128.   Plaintiff, on behalf of himself, and all others similarly situated, requests the Court to enter judgment against GM, as follows:

a.   an order pursuant to Fed. R. Civ. P. 23 certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

b.   a declaration that the AC Systems in the Class Vehicles are defective;

c.   a declaration that GM is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

d.      an order enjoining GM from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles;

e.      an order requiring GM to permanently repair the Class Vehicles, within a reasonable time period and at no cost to Class Members, so that they no longer possess the AC System Defect;

f.      an award to Plaintiff and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

g.      a declaration that GM must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class Members;

h.      an award of attorneys' fees and costs, as allowed by law;

i.      an award of pre-judgment and post-judgment interest, as provided by law;

j.      leave to amend this Complaint to conform to the evidence produced at trial; and such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

129.  Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff requests a jury trial on any and all counts for which trial by jury is permitted.

Respectfully submitted,

/s/Ronald K. Weiner
Ronald K. Weiner, No. P40706
LIPTON LAW
18930 W. 10 Mile Rd.
Southfield, MI 48075
Telephone: (248) 557-1688
ron@liptonlaw.com

Irwin B. Levin, #8786-49
Richard E. Shevitz, #12007-49
Vess A. Miller, #26495-53
Lynn A. Toops, #26386-49A
COHEN & MALAD, LLP
One Indiana Square, Ste. 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
vmiller@cohenandmalad.com
ltoops@cohenandmalad.com

*Counsel for Plaintiff and the Proposed Plaintiff Class*

Dated:  February 14, 2018